# BOARD OF ZONING APPEALS, CITY OF FALLS CHURCH

## V.

## MICHAEL F. O'MALLEY, ET AL.

Record No. 820508

Decided June 14, 1985, at Richmond

Present: All the Justices

*Brian M. O'Connor (Miller, O'Connor & Bucholtz*, on briefs), for appellant.

*William M. Baskin (Baskin, Baskin & Jackson*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

The issue in this appeal is whether the trial court erred in reversing and remanding a decision of the Board of Zoning Appeals of the City of Falls Church (Zoning Board). The Zoning Board denied an application for multiple zoning variances. In our opinion, the trial court should not have disturbed the decision of the Zoning Board.

In December 1979, Michael F. O'Malley and Thomas O'Malley (the O'Malleys) purchased property in Falls Church. The property was zoned T-1, transitional. The uses permitted by right in the T-1 zone included residential, the use to which the O'Malleys put the property upon its purchase, and commercial, the use to which the O'Malleys proposed to put the property. The property is bounded on the east by a professional office building, on the west by a residence, and to the rear by a residence. Directly across the street is a row of townhouses fronting on Great Falls Street, a two-lane undivided street.

The property contains a single-family detached dwelling. On April 29, 1981, the O'Malleys filed an application for a site plan to use the existing dwelling for professional offices as allowed in the T-1 zone. In that same application, they also requested several

variances. At a public hearing on June 4, 1981, the following eight variances were considered:

1. to permit two successive vehicular entrances to be less than 40 feet apart measured along the curb line;
2. to permit an entrance for two-way traffic to be 16 feet wide instead of 22 feet wide;
3. to permit an access aisle for off-street parking to be 12 feet wide instead of 22 feet wide;
4. to permit a vehicular entrance and exit to business off-street parking to be 40 feet instead of 100 feet from a residential district;
5. to omit a 6-inch header curb around landscape areas that border a vehicular use area and parking spaces;
6. to permit a 1.4 foot wide perimeter landscape strip between a vehicular use area and an adjacent property instead of 10 feet;
7. to omit a 3-foot wide landscape strip and/or bumper guard between building and adjacent access aisle; and
8. to omit one loading space.

The Zoning Board heard a report from the Zoning Administrator, testimony from the O'Malleys, and testimony from affected citizens. Five citizens either expressed opposition to or voiced concern about the application. A petition signed by forty-seven residents opposed to the application was received by the Zoning Board. In addition, the Zoning Board considered other information from various city departments. After taking evidence, hearing argument, and discussing the application, the Zoning Board denied all the variances. The Zoning Board gave several reasons for its action: 1. the variances sought were so many in number as to suggest that professional offices might not be a proper use for the property, 2. the public opposition to the application, 3. the narrow, unsafe two-way access aisle to the rear parking lot, and 4. the Zoning Board's view that the O'Malleys had failed to meet the criteria set forth in the Zoning Ordinance for granting variances.

The O'Malleys appealed to the trial court. The court did not take additional evidence. Instead, it decided the case on the basis of the Zoning Board's record. The trial court ruled that the Zoning Board acted arbitrarily. According to the trial court, "the unusual narrowness of the lot mandated the variances." The trial

court found that no adverse impact would be created by the proposed development. The trial court reversed the decision of the Zoning Board and remanded the case to the board for the issuance of the variances subject to "reasonable conditions."

In our opinion, the trial court improperly substituted its judgment for that of the Zoning Board. The controlling principle has been often repeated:

> A decision of a board of zoning appeals is presumed to be correct, and the burden is on the appealing party to overcome this presumption in the trial court. A court may not disturb a board's decision unless the board applied erroneous principles of law or its decision was plainly wrong and violated the purpose and intent of the zoning ordinance.

*Bd. of Zoning App.* v. *Bond*, 225 Va. 177, 179-80, 300 S.E.2d 781, 782 (1983). *Accord Packer* v. *Hornsby*, 221 Va. 117, 120, 267 S.E.2d 140, 141 (1980); *Alleghany Enterprises* v. *Covington*, 217 Va. 64, 67, 225 S.E.2d 383, 385 (1976). In *Board of Zoning Appeals* v. *Fowler*, 201 Va. 942, 948, 114 S.E.2d 753, 758 (1960), we explained that zoning boards exist in order to apply their expert discretion to matters coming within their cognizance. In *Fowler*, we went on to note that judicial interference is permissible only for relief against arbitrary or capricious conduct constituting a clear abuse of discretion. Finally, in *Fowler*, we stated that there is a *prima facie* presumption that the power and discretion of a board of zoning appeals has been properly exercised.

The O'Malleys failed to meet their burden of proof. They failed to establish that denying the variances unreasonably restricted the use of their property. All the O'Malleys showed was that though their property was being used for residential purposes, they desired to use it for professional office space. In order to accomplish their goal, they needed, according to a stipulation relied on by the trial court, at least five variances to facilitate the commercial use of the property. These variances concerned matters that impinged upon the safe access to the property by vehicles, pedestrians, and deliverymen. They also related to matters of traffic congestion on the two-lane street on which the property fronts. Given the evidence adduced in the zoning hearing, the Zoning Board acted well within its discretion in denying the variances.

■ The O'Malleys' argument, that they are being unreasonably restricted in the use of their property, stems from their view that because the property is zoned T-1, they have a *right* to use it for professional office space. The fallacy in this argument is that though the use contemplated by the O'Malleys is one permitted by right, the exercise of that right is conditional, not absolute. The condition is that the property conform to certain access and other requirements before it can be used commercially. Here, those requirements include, among other things, the width of the curb cut, the width of the access road, the number of rear parking spaces, and the size of the buffer between a vehicular use area and the adjacent property line. These requirements cannot be ignored simply because the property is zoned T-1. If the O'Malleys' argument were accepted, the other requirements would, in effect, be rendered null and void. Any owner of T-1 property could put the property to any permitted use without regard to safety or other considerations. In rejecting these variances, the Zoning Board was not plainly wrong.

In light of the foregoing, the judgment appealed from will be reversed and final judgment entered on behalf of the Zoning Board.

*Reversed and final judgment.*